**Laina ROUNDY, Plaintiff and Appellant,**

v.

**Travis STALEY, Defendant and Appellee.**

No. 981062–CA.

Court of Appeals of Utah.

July 22, 1999.

---

Peter C. Collins, Bugden, Collins & Morton, Salt Lake City, for Appellant.

Christian W. Nelson, Lynn S. Davies, Richards, Brandt, Miller & Nelson, and John

E. Hansen, Scalley & Reading,. Salt Lake City, for Appellee.

Before GREENWOOD, Associate P.J., and BENCH and JACKSON, JJ.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 Plaintiff Laina Roundy appeals from a jury verdict denying her damages in a personal injury suit as a result of the jury's finding that she was sixty percent negligent and defendant, Travis Staley, was forty percent negligent. Roundy claims the trial court erred in refusing to grant her a new trial based on the improper admission and nondisclosure of testimony and a surveillance video that impeached testimony about her injuries. Roundy also argues the trial court erred in granting a directed verdict in favor of Staley on her claim for punitive damages. We reverse and remand for a new trial.[1]

## BACKGROUND

¶ 2 Roundy sustained injuries when she and Staley were involved in a automobile accident. Roundy brought a negligence action against Staley and also sought punitive damages under section 78–18–1 of the Utah Code. See Utah Code Ann. § 78–18–1 (1996 & Supp.1998).

¶ 3 Before trial, Roundy sought discovery from Staley on two different occasions, requesting information about witnesses and evidence that Staley planned to use at trial. Although Staley's counsel mentioned during jury selection that he might call Ron Gunderson as a rebuttal witness, he never disclosed Gunderson as a witness or the surveillance tape Gunderson had made of Roundy in his answers to her requests for discovery.

¶ 4 The trial focused primarily on the color of the traffic light at the time of the accident, which party had the right-of-way, and the nature and extent of Roundy's injuries. Staley called Dr. Gerald Morass to testify as an expert on Roundy's injuries. Although Dr. Morass had prepared an independent medical examination report concluding that Roundy suffered from five percent permanent im-

pairment, he testified that after seeing a surveillance video of Roundy, he doubted Roundy's truthfulness about the extent of her injuries. When Roundy learned of the tape through Dr. Morass's testimony, she requested that the trial court order Staley to disclose Gunderson's identity and the video tape. The trial court denied Roundy's request and the evidence, showing Roundy engaging in activities that she had testified she was unable to perform, was presented to the jury. At the conclusion of the trial, Staley moved for a directed verdict on Roundy's punitive damages claim, and Roundy moved for a new trial based on the admission of Gunderson's testimony and the tape. The trial court granted the directed verdict and denied Roundy's motion for a new trial. The jury subsequently found Roundy sixty percent negligent and Staley forty percent negligent, preventing Roundy from collecting damages. Roundy appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 5 Roundy argues the trial court erred in refusing to grant her motion for a new trial based on the nondisclosure of Gunderson as a witness and the surveillance video. "Because the grant of a new trial is ordinarily left to the sound discretion of the trial court, we will review the court's decision in this regard under an abuse of discretion standard." Child v. Gonda, 972 P.2d 425, 429 (Utah 1998). Typically, denial of a motion to compel discovery is reviewed under an abuse of discretion standard, see Archuleta v. Hughes, 969 P.2d 409, 414 (Utah 1998), but the question of whether the trial court erred in denying Roundy's motion to order disclosure of the video tape and its preparer presents a question of law that we review for correctness. See State v. Pena, 869 P.2d 932, 936 (Utah 1994).

## ANALYSIS

I. Preservation of Issue for Appeal

¶ 6 At oral argument, Staley argued that the issue of whether the trial court

---

1. Because we grant Roundy a new trial at which she may renew her claim for punitive damages, we do not address this issue.

erred in admitting Gunderson's testimony and the tape was not properly before this court because Roundy failed to preserve the issue for appeal. We disagree. Although Roundy objected neither to introduction of the tape nor to Gunderson's testimony concerning the tape, Roundy had previously discussed introduction of this evidence with the trial judge. Our review of the record reveals that this colloquy amounted to an oral motion to compel Staley to disclose Gunderson's identity and to provide the video tape—a motion the court unequivocally denied, stating that the testimony and the tape would be admitted as rebuttal evidence. Therefore, further objection to the admission of Gunderson's testimony and the tape at the time they were introduced would have been futile. *See Beltran v. Allan,* 926 P.2d 892, 901 (Utah Ct.App.1996) (Billings, J., dissenting) ("It is well established that the law does not require litigants to do a futile or vain act.").

¶ 7 Furthermore, this court recently stated that " 'absent an order creating a judicially imposed deadline [for disclosing witness lists], a trial court may not sanction a party by excluding its witnesses.' " *Rehn v. Rehn,* 974 P.2d 306, 314 (Utah Ct.App.1999) (quoting *Berrett v. Denver & Rio Grande W. R.R.,* 830 P.2d 291, 296 (Utah Ct.App.1992)). In this case, the trial court did not set a specific date for disclosure of witnesses and evidence. Therefore, even if Roundy had objected to the admission of the testimony and tape at the time this evidence was introduced, the trial court could not have excluded the evidence. We thus conclude that because any objection to the introduction of Gunderson's testimony and the tape would have been futile, Roundy's oral motion to compel disclosure of this evidence was sufficient to preserve this issue for appeal. *See Samples v. Mitchell,* 329 S.C. 105, 495 S.E.2d 213, 215 (App.1997) (holding judge's ruling on admissibility of surveillance video during trial sufficient to preserve issue for appeal despite counsel's failure to make a contemporaneous objection when the evidence was introduced because "no opportunity existed for the court to change its ruling"). Furthermore, the issue before us in this appeal is whether the trial court should have ordered disclosure, not admissibility of the video and Gunder-

son's testimony. Roundy preserved that issue in her oral motion to disclose and does not assert any other basis for inadmissibility of the evidence.

## II. Disclosure of Evidence

¶ 8 Roundy argues that Utah's discovery rules required Staley to disclose Gunderson's identity and the tape in response to Roundy's requests for discovery. Although no Utah cases have directly addressed the issue of whether a party must disclose a surveillance video in response to requests for discovery, the Utah Supreme Court has held that the

> purpose [of Utah's discovery rules] is to make procedure as simple and efficient as possible by eliminating any useless ritual, undue rigidities or technicalities which may have become engrafted in our law; and to remove elements of surprise or trickery so the parties and the court can determine the facts and resolve the issues as directly, fairly and expeditiously as possible.

*Ellis v. Gilbert,* 19 Utah 2d 189, 190, 429 P.2d 39, 40 (1967).

¶ 9 Most courts addressing this issue have held that a party in possession of a surveillance video tape must disclose it to the opposing party prior to trial. *See Martino v. Baker,* 179 F.R.D. 588, 589 (D.Colo.1998). For example, in *Samples v. Mitchell,* 329 S.C. 105, 495 S.E.2d 213 (App.1997), the defendant in a personal injury case offered a surveillance video tape of the plaintiff at trial after failing to disclose the tape in his answers to plaintiff's discovery requests. *See id.* at 214. In holding that the trial court erred in admitting the tape, the appellate court noted,

> "This question seems to arise most often when the defendant in a personal injury case has videotaped or collected some other visual evidence of the plaintiff after the accident to impeach the plaintiff on the extent of his or her injuries. Discovery of the evidence is generally permitted."

*Id.* at 215 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.41(4)(b) (3d ed.1997)). The court also stated that "[m]any states that have wrestled with the question [of whether surveillance tapes are

discoverable] have held at least the existence of the video tape must be revealed in response to discovery requests." *Id.* Finally, the court concluded that the "defendant's surveillance video of the plaintiff was clearly relevant to a personal injury claim" and failure to disclose the tape constituted "an inaccurate response to [plaintiff's] interrogatories." *Id.* at 216.

¶ 10 Similarly, the Mississippi Supreme Court in *Williams v. Dixie Electric Power Ass'n,* 514 So.2d 332 (Miss.1987), held that a defendant who taped the plaintiff prior to and during trial was required to disclose this evidence in response to plaintiff's requests for discovery. *See id.* at 336–37. The court emphasized that the purpose of discovery rules is to "promote fair trials" and that "[o]nce an opponent requests discoverable material, an attorney has a duty to comply with the request regardless of the advantage a surprise may bring." *Id.* at 335; *see also Samples,* 495 S.E.2d at 217 ("The entire thrust of the discovery rules involves full and fair disclosure, 'to prevent a trial from becoming a guessing game or one of surprise for either party.' " (Citation omitted.)).

¶ 11 In this case, Roundy twice requested that Staley identify all witnesses he intended to call at trial. Although Roundy did not specifically request information concerning the surveillance video, her interrogatories were sufficiently broad that Staley should have revealed Gunderson's identity and the tape. Thus, we conclude the trial court clearly erred in refusing to order Staley to reveal Gunderson's identity and the surveillance video. This holding is consistent with the purpose of Utah's discovery rules, facilitating fair trials with full disclosure of all relevant testimony and evidence.

¶ 12 We reject Staley's argument that he was not required to disclose the tape and related testimony because it was rebuttal evidence. Although this evidence was used in an attempt to impeach Roundy's testimony regarding her injuries, this alone does not render it rebuttal evidence. *See Williams,* 514 So.2d at 336 (rejecting argument that undisclosed witness's testimony was rebuttal evidence because undisclosed evidence only rebutted part of plaintiff's testimony and

stating "if we accepted such a theory, 'there would be no basis for the principle for ever requiring the defendant to disclose in advance the evidence it would offer at trial, for all such evidence in this sense is rebuttal' " (citation omitted)). Rather, rebuttal evidence is that which a party may or may not use, depending on the testimony elicited at trial.

¶ 13 In this case, Staley deposed Roundy and knew the substance of her testimony before trial. We find Staley's argument that he only planned to use the tape if it contradicted Roundy's testimony disingenuous. To the contrary, it is apparent that Staley prepared the tape for introduction at trial. Thus, we cannot characterize the tape and testimony as rebuttal evidence. *See McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175, 179 (Ind.1993) (holding "the nondisclosure of a rebuttal witness is excused only when that witness was unknown and unanticipated; known and anticipated witnesses, even if presented in rebuttal, must be identified pursuant to a court order, such as a pretrial order, or to a proper discovery request"); *cf. Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513, 516 (5th Cir.1993) (noting doctor used to impeach plaintiff's testimony in personal injury case not "rebuttal witness," and " 'a defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a "rebuttal witness," or anything analogous to one' " (citation omitted)); *Martino,* 179 F.R.D. at 589 (noting surveillance tapes are "primarily substantive evidence and not totally or even basically impeachment evidence," and holding defendant required to disclose surveillance tapes when "there would be a discrepancy between the testimony the plaintiff will give and that which the films would seem to portray" (citation omitted)).

¶ 14 Staley also argues that he was not required to disclose the testimony or the tape because it is protected attorney work-product. We disagree. Evidence prepared in anticipation of introduction at trial is clearly discoverable under Utah Rule of Civil Procedure 26(b)(1). *See* Utah R. Civ. P.

26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any ... tangible thing[ ] and the identity and location of persons having knowledge of any discoverable matter."). As one court aptly noted, a defendant who refuses to reveal a video tape of the plaintiff in a personal injury case fails to

> comport with the broad purpose of our discovery rules in encouraging and demanding that parties disclose and supply relevant evidence upon request. A full, free, and open disclosure of relevant facts which would expedite and promote the resolution of the disputed factual issue did not prevail in this case. By failing to provide this information through discovery, the defendant denied the plaintiffs an opportunity to present their case in a manner which would allow [plaintiff] Mrs. McDougal to preserve and protect her credibility.

*McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788, 796–97 (W.V.1995); *see also State v. Koehr*, No. 62252, 1992 Mo.App. LEXIS 1508, at *8–9, 1992 WL 230232, at *3 (Mo.Ct.App. Sept. 22, 1992) (noting majority rule that although surveillance information is work product, such evidence is not protected if it will be used by the defendant at trial because "plaintiff needs an opportunity to examine the material to guard against mistaken identity, possible exaggeration, distortion, and even fraud by the defendant"); *Samples*, 495 S.E.2d at 216 (holding surveillance video of plaintiff not protected attorney work product because "[i]f [defendant's] attorney believed [the plaintiff] had no right to this evidence, ... she should have either objected to the interrogatory or disclosed the existence, but not the content, of the evidence and moved for a protective order").

¶ 15 Having determined the trial court erred in failing to require Staley to disclose the surveillance video and Gunderson's testimony, we must next determine whether the error was harmful. *See Cal*

*Wadsworth Constr. v. City of St. George*, 898 P.2d 1372, 1378–79 (Utah 1995) ("[A]n erroneous decision to admit or exclude evidence does not constitute reversible error unless the error is harmful. An error is harmful if it is reasonably likely that the error affected the outcome of the proceedings." (Internal citations omitted.)).

¶ 16 Staley argues that admission of Gunderson's testimony and the tape was harmless because this evidence was relevant only to the issue of damages—an issue the jury did not reach. However, a determination of liability in this case hinged on the parties' credibility. Because Staley introduced Gunderson's testimony and the tape to impeach Roundy's credibility, this evidence was directly relevant to the issue of liability. Furthermore, the record reveals that this case largely hinged on Roundy's testimony versus Staley's. In fact, Roundy's counsel specifically stated in closing arguments that "[t]his case has to do exactly and precisely with the credibility of the plaintiff." Therefore, if Roundy's testimony had not been impeached by admission of Gunderson's testimony and the tape, it is reasonably likely the jury might have reached a different verdict. We therefore conclude the trial court's error in admitting Gunderson's testimony and the tape without prior disclosure was harmful.

### CONCLUSION

¶ 17 Roundy properly preserved the issue of admission of the testimony and the tape through her counsel's colloquy with the trial judge that was tantamount to an oral motion to compel Staley to disclose the evidence. Because the purpose of Utah's discovery rules is to foster the fair and efficient exchange of information between parties, we conclude the trial court clearly erred in refusing to order Staley to disclose the disputed evidence. The video tape and accompanying testimony were not rebuttal evidence, nor were they protected attorney work-product. Furthermore, the surveillance tape directly undermined Roundy's credibility—a factor crucial to the determination of liability. Therefore, we conclude the error was harmful. Accordingly, we grant Roundy a new trial, *see* Utah R. Civ. P. 59(a)(7) (providing

for new trial on the basis of "[e]rror in law"), at which she may renew her claim for punitive damages.

¶ 18 Reversed and remanded for a new trial.

JACKSON, Judge (concurring in result):

¶ 19 I agree with Judge Greenwood that we should reverse and remand for a new trial. However, I would reach that result using a somewhat different analysis.

¶ 20 Instead of primarily focusing on the presumed motion to order disclosure, I would reverse based solely on Roundy's challenge to the trial court's denial of her motion for a new trial because of "[a]ccident or surprise, which ordinary prudence could not have guarded against." Utah R. Civ. P. 59(a)(3). My analysis would eliminate the need to evaluate issue preservation and to state the multiple standards of review found in the main opinion.

¶ 21 Even if Roundy did not specifically object during trial regarding the issue of unfair surprise, she raised it in her motion for a new trial. In denying the motion, the trial court considered the issue on the merits. "Because the court considered the alleged error rather than finding it waived, [Roundy's] right to assert the issue on appeal was resuscitated." *State v. Seale*, 853 P.2d 862, 870 (Utah 1993).

¶ 22 The main opinion correctly identifies abuse of discretion as the standard of review for the denial of a motion for a new trial, then ably analyzes the law vis-a-vis the facts of this case to establish that there was a harmful surprise at trial that Roundy's "ordinary prudence could not have guarded against." Utah R. Civ. P. 59(a)(3). Based on that analysis, I believe that the trial court abused its discretion in denying Roundy's motion for a new trial.

BENCH, Judge (dissenting):

¶ 23 I respectfully dissent.

¶ 24 The main opinion holds that appellant preserved for appeal the issue of whether the trial court erred in admitting Gunderson's testimony and surveillance tape. I disagree. Appellant failed to make any objection to the trial court regarding the admissibility of this evidence. At the trial court, appellant contended only that appellee's failure to disclose constituted a discovery violation. Appellant's concern about nondisclosure is insufficient to preserve for appeal the issue of the admissibility of the underlying evidence.

> To preserve an issue for appeal, a party claiming error in the admission of evidence must object on the record in a timely fashion. One who fails to make a necessary objection or who fails to insure that it is on the record is deemed to have waived the issue.

*Lamb v. B & B Amusements Corp.*, 869 P.2d 926, 931 (Utah 1993) (citation omitted); *see also* Utah R. Evid. 103(a)(1) (providing "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless ... a timely objection or motion to strike appears of record, stating the specific ground of objection").

¶ 25 The main opinion concedes that appellant did not object to the admission of the evidence, but concludes that her oral motion to compel disclosure sufficiently preserved the admissibility issue. In supporting this conclusion, the main opinion cites *Samples v. Mitchell*, 329 S.C. 105, 495 S.E.2d 213 (App. 1997). *Samples* is easily distinguished from the instant case because the appellate court there held that a *renewed* admissibility objection was unnecessary to preserve the issue for appeal when the trial court had already made an admissibility determination. *See id.* at 215. In other words, in *Samples*, the admissibility issue had previously been raised and ruled upon. By comparison, a determination concerning a request for disclosure is very different from a determination as to the admissibility of the evidence. In the case at bar, there has never been an objection and consequent determination on the question of admissibility.

¶ 26 In holding that the motion to compel preserved the admissibility issue, the main opinion misstates the trial court's ruling. The main opinion asserts that, in denying appellant's motion to compel, the trial court ruled that Gunderson's testimony "would be admitted as rebuttal evidence" at trial. The

trial court, however, did not state that the evidence would be admitted. In denying appellant's motion to compel, the trial court stated as follows:

> [T]he Court finds that the disclosure of the testimony for the rebuttal witness need not be made by the defense. And if the witness is called to testify later on, based upon other testimony needing to be rebutted, that that can be presented at that time. *And if you have an objection about that before the witness is called, we may deal with that.*

(Emphasis added.) The trial court therefore clearly ruled only that disclosure was unnecessary at that time because of the rebuttal nature of the evidence. The trial court did not rule that the evidence would be admitted at trial; nor did it make any admissibility determination.

¶ 27 It is critically important to note the trial court's clear statement above that "if you have an objection about that before the witness is called, we may deal with that." Despite this clear invitation to raise an appropriate objection once the evidence was presented for admission at trial, appellant failed to make *any* objection. By failing to object at all when the evidence was offered and admitted, appellant waived her grounds for appeal.

¶ 28 The main opinion also errs in asserting that even if appellant had made an appropriate objection at the time the evidence was introduced, "the trial court could not have excluded the evidence." This is not correct. The trial court clearly had the ability to exclude the evidence if a valid evidentiary objection had actually been made at trial, such as an objection under Rule 403 of the Utah Rules of Evidence.[1] As already illustrated, the trial court actually *invited* evidentiary objections if appellee attempted to use the evidence at trial.

¶ 29 Simply stated, appropriate evidentiary objections could have been sustained at trial, and such objections had to be made to preserve the admissibility issue for appeal. Ap-

pellant's failure to raise the issue is therefore fatal to her appeal. *See, e.g., Lamb,* 869 P.2d at 931. The threshold determination that the issue was not preserved should preclude our consideration of the merits of the case on appeal. *See id.* ("Plaintiff's failure to make an objection on the record bars our consideration of the issue on appeal.").

¶ 30 In his separate concurring opinion, Judge Jackson contends that the trial court abused its discretion in denying appellant's motion for a new trial based on surprise. *See* Utah R. Civ P. 59(a)(3) (stating "a new trial may be granted [for] ... surprise, which ordinary prudence could not have guarded against"). "The question of whether to grant a motion for a new trial is within the discretion of the trial court, whose ruling will not be disturbed on appeal unless the facts show a *clear* abuse of discretion." *Chournos v. D'Agnillo,* 642 P.2d 710, 713 (Utah 1982) (emphasis added). I find no abuse of discretion, much less a "clear" abuse of discretion, and I would therefore not disturb the trial court's denial of appellant's post-judgment motion. As stated by our supreme court:

> Failure to interpose a timely objection to testimony challenged on the ground of surprise would itself be a sufficient reason to deny a motion for a new trial on that ground.... Rule 59(a)(3) was not intended to give attorneys the option of waiting until after the case has been decided adversely by the court before they pursue deficiencies in their proof by offering additional evidence to counteract alleged surprises encountered during trial.

*Id.*

¶ 31 Even if the issue was preserved in the motion for a new trial, as urged by Judge Jackson, I would conclude that the trial court's ruling was not an abuse of discretion. Therefore, I dissent and decline to consider the merits of the issues addressed in the main opinion.

---

1. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R. Evid. 403.